Susanna Ethridge *v.* Hannah Bennett's Executors.

*Wills—Capacity of Testator—Evidence—Undue Influence.*

If the testator knows what he is about, and is capable of exercising thought, judgment and reflection, he has testable capacity.

Undue influence is such an influence as prevents the party from freely exercising his own judgment.

The law presumes every man to be of sound and disposing mind and memory.

The subscribing witnesses being placed around the testator at the time of the execution of his will, for the special purpose, among other things, of ascertaining and judging of his capacity, they are permitted to testify as to the opinion they formed at the time as to his mental condition.

The presence of a beneficiary under the will of the testator at its execution is not, of itself, improper, suspicious or objectionable.

(*New Castle, November, 1891.*)

Issue from Register of Wills of New Castle county. In this case there were two wills probated; one dated Trenton, January 20, 1890, and a subsequent will dated Wilmington, Del., January 9, 1891. Under the first mentioned will, Hannah Bennett bequeathed one-fourth of her estate, amounting to some eight thousand dollars, to Wm. J. Fisher and the remainder to Wm. J. Pyle and his wife, all of Wilmington, Delaware. Under her second will Mrs. Bennett left all her property to her niece, Susanna Ethridge, the plaintiff, who had been her constant attendant and nurse during the infirmities of her declining years. Very shortly after the death of Mrs. Bennett, which occurred in the latter part of February, 1891, the legatees under the will of January 20, 1890, had that will placed upon record in Trenton, before the will of 1891 bequeathing her property to her niece, had been put upon record in Wilmington. The issue to be determined in this case was, which of these two wills was her last will and testament.

Heard before Houston and Cullen, J. J.

*Benjamin Nields,* for the plaintiff, after proving the formal

execution of the will of January 9, 1891, asked one of the testamentary witnesses to state the circumstances under which the said will was written.

*William S. Hilles,* for the defendants, objected, contending that nothing more than the formal propounding of the will could be proved by said witnesses until the will had been attacked by the caveators. *Lodge v. Lodge,* 2 Houston, 418.

THE COURT, CULLEN, J. You have proved the formal execution, and in proving this you have the right to prove the facts connected with it. The objection is merely technical, and I don't see that it affects the rights of the parties on the other side. It is true that if you go back in the cases tried in this court as long as twenty years ago, you will find that the party proves the formal execution of the will and there rests; but it is also true that there are facts surrounding it that must come out; such as, Did you draw the will? What are the circumstances connected with it? They are part of the *res gestae.* That evidently was the practice in the case of *Hall v. Dougherty.* You have the right to examine all of the facts and circumstances in proving these facts, because the burden is upon you here.

Before resting, Mr. Nields inquired of the court if it should be considered the order for the caveators to go on and attack the will proved, and if he could then reply to their testimony with such testimony as he could produce.

The court so ruled. •

*Hilles,* for the defendants, produced Dr. Kittinger, the attending physician of the deceased, and asked him what was her capacity to make a will.

*Nields,* for the plaintiff, objected, contending that the question put to testamentary witnesses should be: "Was she of sound and disposing mind and memory?"

HOUSTON, J. It has always been considered that a reputable

physician can testify as to weakness or debility of mind at the time. You can ask the question.

CULLEN, J.   To be restricted to the fact of making the will.

*Mr. Hilles* produced William B. Pyle, one of the defendants, asking witness the following question : State what you said to Mrs. Bennett in the parlor of her house at 1202 King street on Sunday, December 7, 1890, and what she said to you at that time ?

*Mr. Nields* for plaintiff inquired the purpose of the inquiry.

*Mr. Hilles :* It is to show what Mrs. Bennett thought of certain questions that had been asked her in relation to her property, and what influence had been brought to bear upon her in relation to that matter ; also to show her likes and dislikes, and certain intermeddling in her affairs.

*Mr. Nields :* I object to any testimony as to her likes and dislikes as irrelevant.

*Mr. Hilles* cited *Sutton v. Sutton,* 5 Harrington, 462.

CULLEN, J.   If I understand the question, you propose to prove by this witness the views that were expressed by the testatrix some five or six months after the first will was made, and a month or two prior to the making of the second will.   That testimony, of course is not conclusive so far as that matter is concerned, but I understand that it is offered merely as corroborative of the other facts growing out of it, for the purpose of showing what the views of the testatrix were as to the disposition of her property ; in other words, the declarations of the testatrix at this time as showing her state of mind and condition.

HOUSTON, J.   According to the citation, it is admissible testimony.

William J. Fisher was produced on the part of the defendants, and Mr. Nields asked for the ruling of the Court upon the admissibility of Fisher's evidence, he being a legatee under the will and named as one of the executors of the same, and therefore a party in interest.

*Mr. Hilles* contended that Mr. Fisher was not a party to the will, having renounced his rights as an executor.

CULLEN, J. We think the testimony is admissible though in admitting it under the precedents established by the courts, it is not to be necessarily conclusive.

Rev. George M. Hickman, who had visited the testatrix during her last sickness, was produced and asked by Mr. Hilles:

From the facts and circumstances to which you have testified, what is your opinion of Mrs. Bennett's power then to make a will?

Objected to by Mr. Nields, who contended that no one could give his conclusions but the testamentary witnesses or some one called as an expert upon the human mind.

*Mr. Hilles* cited *Jamison v. Jamison*, 3 Houston, 121 ;. *Lodge v. Lodge*, 2 Houston, 419–21 ; *Duffield v. Morris*, 2 Harrington, 385.

HOUSTON, J. His opinion goes to the jury upon the facts and circumstances upon which it is based, with the general intelligence of the witness.

CULLEN, J., charging the jury :

*Gentlemen of the Jury :* I have no doubt that you are gratified —as well as the Court and counsel in this case, which has been somewhat prolonged, but not by any means unnecessarily, we think —that this case is coming to a close. And I must say, gentlemen, that of all the cases which I have ever heard tried—and they have not been a few—I have never heard one more ably tried, better tried, or in which the manner of counsel was more pleasant, not only toward each other, but toward the court, than in this case ; and it has been a matter of great satisfaction and of great pleasure to the court. We say to you, gentlemen, that each of the counsel in the trial of this case has discharged his duty fully and clearly.

The question involved, gentlemen, is an important one. It is not a question, I am very glad to say, in which there are perplex-

ing questions of law arising. It is one relative to which, as between the learned counsel who argued this case, there is no dispute whatever upon the questions of law that arise. It is a purely a question of evidence for you to decide according to principles of law which have been laid down by the decisions of our own courts and which are in conformity with previous English decisions, whence we have derived our law, as well as the unanimous decisions all over this country. The question for you, gentlemen, is a simple one; and it is better to remove and eradicate all other matters from your mind relative to this case, except those things which pertain to the matter that you are immediately to try. The question which you are to decide is, whether or not the paper writing which purports to be the last will and testament of Hannah Bennett, is her last will and testament.

You have nothing to do with any matters as connected with any other will or any other transaction whatever,—though something has been said, and necessarily brought into the argument of this case, in relation to another will; but you are to confine your deliberations in arriving at your decision to the facts and circumstances immediately surrounding the execution of this paper, so that you may determine as to whether or not—according to the rules and instructions which we shall have to give you as laid down by the decisions of this court—this party was capable of making a last will and testament. So far as the making of the will was concerned under the statutory provision, a person 21 years of age, of sound and disposing mind and memory is competent to make a will. Where a will is made in due form ; that is, where the will is signed by the testator and is attested by two credible witnesses, then it is *prima facie* a valid will. The law presumes every man to be a man of sound and disposing mind and memory. When the formalities under those circumstances as required by the statute, are executed the will is *prima facie* proved. This paper-writing, as I have said, purports to be the last will and testament of Hannah Bennett; and is her last will, in the presumption of the law, until

facts and circumstances are presented which go to show and prove that, according to the decisions of law applying to the evidence as offered, she was not competent to make that last will and testament. Now it is contended on the part of the parties who opposed the will that she was not possessed of sufficient capacity to make a will. If that fact is proved to your satisfaction, that, of course, would invalidate the will.

There is another ground also which is taken, and, that is, that the party, though possessed of sufficient capacity to make a will, yet by reason of a superior influence that was exerted over her, (influence of such a nature and character as would control the will of the testator), she was not competent to make a will.

Those are the two matters which are presented here in avoidance of this last will and testament. In order that you may understand this matter as to what constitutes a sound and disposing mind and memory, I will state to you very briefly a few of the decisions in this State:

The first case I will cite is *Chandler and others v. Ferris*, which is somewhat different from this, yet the same principles apply in both cases. This is one of the earliest cases that have been tried in this court, and in it this question as to what constitutes a sound mind and memory was decided. The Chief Justice charged the jury, "That if they were of opinion from the evidence, that the testator was capable of exercising thought, judgment and reflection; if he knew what he was about, and had memory, and judgment, his will could not be invalidated on the ground of insanity. Neither could it be set aside on the ground of undue influence, unless such influence amounted to a degree of constraint such as the testator was too weak to resist; such as deprived him of his free agency, and prevented him from doing as he pleased with his property. Neither advice, nor argument, nor persuasions would vitiate a will made freely and from conviction, though such a will might not have been made but for such advice and persuasions."

This matter of making wills, gentlemen, is one relative to

which I don't see that there should be any great misunderstanding. It doesn't take a wise man to make a will. A man must be possessed of sufficient memory to know what he has. He has a right under the laws under which we live to dispose of his property just as he pleases. It matters not whether he gives it to his own relatives or to somebody else. He may have eccentricities and peculiarities, but if those are accompanied at the same time with a sound judgment, discretion and reason, he has a perfect right to do as he please with his property. This matter of undue influence is such an influence as prevents the party from exercising his own judgment, in other words, doing as he pleases. A person has a perfect right, by kindness, by attentions,—even though that may be the ulterior motive which governs him,—to prevail upon a person to devise to him what perhaps without the appeals of kindness and the manner towards him he would not have done. That is proper and lawful, and a will would be perfectly legal made under those circumstances; but, if that will were made by reason of any person being taken advantage of, by reason of weakness, of disease, of threats, so that the party is not able to avoid this influence and is prevented from freely exercising his own will, then that would be undue influence.

Further upon this same question as to what is a sound and disposing mind and memory are the cases of *Duffield v. Morris' Executors*, 2 Harrington, 379; *Cordrey v. Cordrey*, 1 Houston, 273-4; *Lodge et al. v. Lodge's Will*, 2 Houston, 423.

(The above cases were all read to the jury.)

*Jamison et al. v. Jamison's Will*, 3 Houston, 119, was a case that excited a great deal of interest, and was for the purpose of establishing a will which had been drawn by Mr. Lore; the will was lost and it became necessary to set up that will and to prove the facts, and in proving the facts of the will the question was raised as to the capacity of the party to make the will; and all of these questions necessarily arose in the matter. You will observe that all of these decisions re-affirm and reiterate the same principle.

Though it is a thrice-told tale as to what constitutes a sound and disposing mind and memory, yet, considering the high authorities from which they come, I repeat them to you:

"What is the meaning of the terms employed in our law, 'a sound disposing mind and memory?'—and how is the question to be decided?"

"This question, it seems to me cannot be properly determined by any metaphysical theory that we know of, for these are mainly mere theoretical speculations, and are very difficult of comprehension by the common mind, uneducated as it is in the subtleties and niceties of what is called moral philosophy. Nor can it be settled by conjecture, or the mere opinions of the witnesses.

"On the contrary, the question is to be decided solely, and only, by the facts which the testimony in the case discloses."

"It is therefore to the words, the conversations, the appearance, the acts and doings, the conduct and behaviour of the man we are to look to ascertain the state of his mind. These alone, are to us, the external, visible and natural signs, or indications, of his mental condition. And, therefore, in this case, as in all other cases of like nature, the question of capacity must be determined from the facts and circumstances disclosed and established by the evidence. In examining and weighing that evidence, you will carefully consider the character of the several witnesses, for veracity and integrity,—their bias, on the one side, or on the other, if any, —their intelligence and judgment, and their respective opportunities and powers of observation. And here, it is but proper I should say to you, that the law makes a distinction between the subscribing witnesses to the will, and other witnesses. The subscribing witnesses being placed around the testator at the time of the execution of his will, for the special purpose, among others, of ascertaining and judging of his capacity, they are permitted to testify as to the opinion they formed at the time as to the condition of his mind,—whether it was sound or unsound. And if they are persons of intelligence and veracity, their opinions are always entitled

to great weight with the jury." This I desire especially to call your attention to, gentlemen, as it is one of the questions raised in this case—" Other witnesses may testify to his behavior, his conduct, and conversations, his appearance, and to particular facts tending to throw light on the state of his mind, and from which its condition can be fairly inferred,—but they cannot testify to their opinion merely, of his capacity, without also stating the facts upon which that opinion is founded; and if the facts do not fully and clearly warrant that opinion, the opinion must go for nothing, for it is the fact, and not the opinion, upon which you must rely in forming your judgment."

In other words, persons acquainted with the party immediately before, or at the time, have a right to testify to you as to the facts and circumstances,—how the party acted, what the party said, what was the condition of health, from what the party was suffering, and they are permitted to form their own individual opinion as to what they thought was the capacity of the person to make a will; but you are not thereby bound, for you are to take into consideration what the facts are, and may draw a different conclusion : it is so with regard to medical witnesses.

The matter as represented to you is this : this old lady was in a bad condition of health, that she was an elderly lady, that Mr. Emmons was sent for, Mr. Ethridge, the husband of the plaintiff, going for him to draw the will, and at his request he went there,—about these matters there is no dispute. You have heard Mr. Emmons's testimony; he has told you what he saw and the conversation that took place. This is a matter which goes to form a part of the evidence in this case, and has to be taken into consideration in this case. So, gentlemen, you have also heard the testimony of the several other witnesses. There is some conflict of testimony. Where there is a conflict of testimony, you must, if you can, reconcile that testimony. Under our law all witnesses are competent, but it does not necessarily follow that because a man is a competent witness, he is credible. It is your province to ascertain and judge

of the credibility of the evidence offered to you.   In doing that you should take into consideration all the opportunities and facilities that the witnesses have of judging with regard to the mental condition of this person, as far as her capacity to make a will is concerned.   It is not for the court to say anything to you with regard to the weight of that testimony; it is entirely with you, applying to that testimony the law as I have laid it down.   And if, gentlemen, taking the testimony into consideration, you should be satisfied from the evidence, that the mind and memory of Hannah Bennett at the time when she executed her will on the ninth day of January, 1891, was sufficiently sound to enable her to know and understand what she was about or what she was doing, and that she made such a disposition of her property as she intended to make and that she was not unduly influenced—no outside influence by which her will was controlled without her wish or desire, in other words, that a will paramount to her own was substituted in place of her own will which induced her to make a will contrary to her own wish and desire—then in that case you should pronounce this as her last will and testament.   But if, on the contrary, you should be satisfied from the evidence that the mind and memory of the testator at the time she executed her will was not sufficiently sound to enable her to exercise thought, judgment or reflection, and to know and understand what she was about or what she was doing, —then this will ought not to stand; or if you consider that the influence exerted over her was such as controlled her will, this will should not stand.

A question has been raised here in relation to a decision in the case of *Pennypacker v. Pennypacker*, 8 Atl. Reporter, 634, in which it is held, " The law does not regard the presence of a brother or of a nephew of a testator at the execution of his will as improper, suspicious, or objectionable, although they are legatees."

We have to say in relation to that case, that it is good law. The mere fact, *per se* that a man making his will, and that the beneficiaries in that will are admitted into the room,—alone, is not

calculated to throw a suspicion on the will; unless it is coupled with some facts and circumstances surrounding it, going to show that the immediate presence of those persons while the will was being made, influenced and changed, contrary to the will of the testator, what she actually intended to do. It is a very common occurrence—I suppose every member of the bar has drawn a will under such circumstances—for the beneficiary to be present when a will is being drawn. And there is no impropriety in that. It is contended here, however, that not the mere fact that the beneficiary was present, but that the intention was to control the will of this old lady. Whether that was the intention or whether it had any effect or not is a matter entirely for your consideration and rests entirely upon the evidence.

The jury disagreed.